## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**GREAT LAKES HOME HEALTH
SERVICES INC d/b/a GREAT
LAKES CARING,**

                Plaintiff,

                                            No. 15-CV-11053
vs.                                  Hon. Gerald E. Rosen
                            Magistrate Judge Anthony P. Patti

**TRISHA CRISSMAN,**

                Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR <u>PRELIMINARY INJUNCTION</u>

## I. INTRODUCTION

Plaintiff Great Lakes Home Health Services ("Great Lakes"), a Michigan corporation with its principal place of business in Jackson, Michigan, commenced this lawsuit in Jackson County Circuit Court on March 2, 2015 against Defendant Trisha Crissman, a citizen of Wisconsin.  Great Lakes alleges that Crissman, who was formerly employed by Great Lakes as an administrator, violated a Confidentiality and Non-Compete Agreement -- which she had entered into at the commencement of her employment with Great Lakes -- by accepting employment with another health care company (CHI Health at Home ("CHI")) before the two-

1

year term of the Agreement had expired. Great Lakes alleged incalculable irreparable harm and requested a preliminary injunction against Crissman that would prevent her from working for CHI for the remaining duration of the Non-Compete Agreement. Crissman removed the case to this Court pursuant to 28 U.S.C. § 1332, noting complete diversity of citizenship and asserting that the amount-in-controversy requirement was satisfied because the injunction, if granted, would cost her $80,000 in wages.

Great Lakes subsequently filed a Motion to Remand and in the Alternative for Preliminary Injunction (Dkt. # 2), asserting (1) that its own viewpoint of the damages in controversy should govern for diversity jurisdiction purposes, and from its perspective the damages in the case are unquantifiable; and (2) that the Court should enforce the parties' Agreement and enjoin Crissman from working for CHI. The Court previously denied the Motion to Remand, and subsequently held a hearing regarding the request for injunctive relief. This Opinion and Order sets forth the Court's ruling on that request.

## II. PERTINENT FACTS

From March 14, 2012 to August 13, 2013, Crissman worked for Great Lakes -- a home health and hospice care provider -- as a Vice President of Hospice Operations and Business Planning for the State of Michigan. Pl.'s Compl., Dkt. # 1-2 ¶ 8. Her employment was entirely limited to the State of Michigan -- she had

2

no role in Great Lakes's business in neighboring states, such as Ohio or Indiana. Crissman Decl., Dkt. # 7-2, ¶ 15.  At the commencement of her employment with Great Lakes, Crissman signed a Confidentiality and Non-Compete Agreement ("Agreement") that prohibited her from certain conduct that would be competitive with Great Lakes.  As relevant here, the Agreement contained the following clauses:

> **Confidential Information** . . . .  During employment, Employee may have access to information that is confidential or proprietary to Employer or to one of its clients or vendors. This information includes but is not limited to: names addresses and telephone numbers of employees and clients; marketing information; referral sources; patient lists; human resources information training information; business plans; pricing or cost information; margins; ideas; policies and protocols; computer programs; databases; proposed new services and methods of delivery of services; information related to geographical areas targeted for expansion; information regarding new technology; business operations; documents labeled "confidential" or "proprietary;"   and   other   confidential   business   information ("Confidential Information").
>
> . . .
>
> **Confidentiality** . . . .  Employee agrees that during the term of this Agreement and for a period of two (2) years after termination of Employee's employment relationship with Employer, Employee shall not directly or indirectly, either individually or on behalf of or in conjunction with another person organization or company, use or disclose any Confidential Information of the Employer.
>
> . . .
>
> **Non-Solicitation/Non-Compete.** During the term of this Agreement, and for two (2) years following Employee's voluntary or involuntary termination from employment with Great Lakes, employee agrees that

3

he/she shall not directly or indirectly, either individually or on behalf of or in conjunction with another person, organization or company:

. . .

> Divert or attempt to divert business opportunities away from Great Lakes, or encourage business opportunities to conduct business with a Great Lakes competitor.

> Engage in . . . employment with any other entity . . . that provides, or consults in providing, home health care, hospice care, or the sale or rental of durable medical equipment within Great Lakes' market area. Great Lakes' "market area" shall be defined as those counties in which Great Lakes has received Medicare certification at the time of Employee's date of hire with Great Lakes.

Pl.'s Compl. Ex. B to Ex. 1. The Agreement further specified that it was to be governed by Michigan law. *Id.*

Crissman resigned from her position at Great Lakes on August 13, 2013. *Id.* ¶ 15. When Crissman resigned, she signed a Separation Agreement that reiterated the terms of the non-compete provisions of the Agreement and also required that she notify Great Lakes when she secured new employment. *Id.* ¶ 16; Separation Agreement, Dkt. # 2, Ex. C, ¶ 11. About a year and a half later, Crissman accepted a position as the "Vice President of Operations COO" with CHI Health at Home, a home health and hospice care company. Pl.'s Compl. ¶ 18. Her salary at CHI was to be $240,000 annually. Removal, at 6. In accordance with the Separation Agreement, on February 13, 2015 (five days after accepting her new position), Crissman informed Great Lakes that she had accepted employment with

4

CHI. Pl.'s Compl. ¶ 18. From the start of her employment with CHI, Crissman's responsibilities as included work for CHI operations in a number of states, including Ohio and Indiana, but she has no involvement with CHI operations in counties in which Great Lakes also does business. Crissman Decl. ¶ 14.

After receiving notice from Crissman, Great Lakes immediately sent her a cease-and-desist letter (dated February 18, 2015) demanding that she leave CHI's employment. Pl.'s Mot. to Remand, Dkt. # 2, at 3. When Crissman did not do so, Great Lakes filed the instant case in Jackson County Circuit Court, alleging that Crissman had violated both the confidentiality and non-compete provisions of her employment Agreement, and requesting a preliminary injunction to prevent Crissman from working for CHI for the remainder of the Agreement (six months at that time). Pl.'s Compl. ¶¶ 23-30. While Great Lakes did also allege a breach of contract claim, it did not request any specific monetary damages in its complaint. Pl.'s Compl. ¶¶ 31-37 (requesting "any award, including damages, that this Court deems just and appropriate"). On March 20, 2015, Crissman filed a Notice of Removal based on diversity jurisdiction under 28 U.S.C. § 1332. Removal, Dkt. # 1 at 4.

Great Lakes subsequently filed a Motion to Remand, arguing that federal jurisdiction is improper because its claim does not meet the amount-in-controversy requirement of § 1332, which mandates that removal actions based on diversity

5

"exceed[] the sum or value of $75,000." 28 U.S.C. § 1332. This Court denied the Motion, finding that the amount in controversy was satisfied when taken from Crissman's perspective. Dkt. # 13. The Court also required Great Lakes to show cause as to why its motion for a preliminary injunction would not be moot, as less than a month remained on the Agreement at the time of the Order (it expired August 13, 2015). *Id.* Both parties have now briefed that issue.

## III. DISCUSSION

### A.    Preliminary Injunction Standard

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). In deciding whether a plaintiff is entitled to a temporary restraining order or preliminary injunction, courts are to consider four factors:

> (1) whether the plaintiff has a strong likelihood of success on the merits;
> (2) whether it would suffer irreparable harm if preliminary relief is not issued;
> (3) whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and
> (4) whether the public interest would be served by the issuance of a preliminary injunctive order.

6

*Sandison v. Michigan High School Athletic Association, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *UASCO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982). The four considerations applicable to preliminary injunctions are factors to be balanced and are not prerequisites that must be satisfied. *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 399 (6th Cir. 1997); *In re Eagle–Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir.1992). "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *Id.*

Here, when balancing all of the factors, along with the fact that the Agreement expired on August 13, 2015, the Court finds that a preliminary injunction is not warranted. The first factor -- Great Lakes's likelihood of success on the merits -- has the greatest bearing on the outcome of the Motion. In order to establish a likelihood of success on the merits, the movant must generally show that there is a "strong or substantial" probability of success. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). However, a preliminary injunction may still issue where the movant fails to show a strong or substantial probability of success if the movant at least demonstrates "serious questions going to the merits[,] and irreparable harm which decidedly outweighs any potential harm to the [non-movant] if an injunction is issued." *Id.*; *see also Six Clinics*, 119 F.3d at 400.

In order to demonstrate a likelihood of success on the merits, Great Lakes must show a "strong or substantial" probability that the Agreement is both enforceable and was actually breached. The Agreement at issue here has two relevant sets of provisions: the confidentiality provisions and the non-compete provisions. The Court addresses each separately below.

**B.      The Confidentiality Provisions**

The confidentiality analysis here is relatively straightforward. "It is well-established that an injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural." *Kelly Servs., Inc. v. Marzullo*, 591 F. Supp. 2d 924, 942 (E.D. Mich. 2008). More specifically, mere access to or knowledge of confidential information is not sufficient to establish use or disclosure; there must a "substantial imminent threat of disclosure of confidential information . . . to warrant the issuance of an injunction." *See Hoskins Mfg. Co. v. PMC Corp.*, 47 F. Supp. 2d 852, 854 (E.D. Mich. 1999). There is, however, a substantial threat of disclosure where it is virtually *impossible* for an employee to perform the new job without "in effect giving the competitor the benefit of the [former] employer's confidential information." *Id.* at 855 (quoting *Allis-Chamlers Mfg. Co. v. Cont'l Aviation and Eng'g Corp.*, 255 F. Supp. 645, 654 (E.D. Mich. 1966)) (internal quotation marks omitted).

8

Here, there is no question that CHI, Crissman's current employer, is a substantially similar entity to Great Lakes, but critically, Great Lakes has made no specific allegations that Crissman has used or disclosed confidential information. Great Lakes states only that, when Crissman worked there, "[s]he was privy to confidential material from each department within Great Lakes and had access to high-level business marketing and planning discussions," and that "[i]f Crissman is permitted to violate her . . . Confidentiality and Non-Compete Agreement . . . Great Lakes will suffer irreparable harm as a result of the use of Great Lakes's confidential information, [and] the use of its high-level marketing and business strategies."  Pl.'s Compl. ¶ 14, 21.

Once litigation was initiated, Crissman rebutted Great Lakes's presumption that she had or would use and disclose any confidential information by submitting a signed statement that she worked with CHI to create a firewall that "preclude[d] [her] from disclosing any confidential [] information to CHI."  Crissman Decl. ¶ 15.  This firewall allegedly prevents Crissman from accessing anything related to financial performance, sales, marketing and business development, customer services, quality initiatives and outcomes, compliance and regulatory items, legal matters, employee relations, human resources, recruitment, budget preparation, and strategic planning in Ohio and Indiana.  *Id.*  Crissman further stated, under penalty of perjury, that she has "not disclosed any confidential

information learned during [her] employment at Great Lakes to CHI." *Id.* ¶ 16. While these statements are, of course, self-interested, Great Lakes makes no indication that Crissman would be unable to do her job *without* disclosing confidential information, nor does it provide any affirmative evidence that Crissman has disclosed confidential information.

This case is relatively analogous *Hoskins Manufacturing Co. v. PMC Corp*, another case in this District involving an employment-related confidentiality agreement. There, Hoskins Manufacturing Company and PMC were Michigan competitors in manufacturing cables for temperature gauges, and Hoskins had developed a unique high-purity magnesium oxide powder as an insulating material. *Hoskins*, 47 F. Supp. 2d at 853. Three of Hoskins's employees, who had had access to or knowledge of this substance, left to work for PMC, and Hoskins alleged that PMC would inevitably obtain confidential information or trade secrets based on the former employees' knowledge. *Id.* PMC, however, presented unrebutted proofs that its manufacturing process was significantly different from Hoskins's to indicate that the confidential information at issue had little to no competitive value. *Id.* at 856. The court held that Hoskins's conclusory allegations were insufficient to establish inevitable disclosure, and that an injunction preventing the employees from working for PMC was unwarranted. *Id.* at 854. Similar reasoning applies here.

10

C.     The Non-Compete Provisions

Under Michigan law,[1] a non-compete agreement is enforceable provided that it is "reasonable as to its duration, geographical area, and the type of employment or line of business." M.C.L. § 445.774a.  "To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited." *Id.*  This is an inherently fact-specific inquiry.  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 547 (6th Cir. 2007)*.*

The parties' arguments as to the enforceability of the non-compete provisions focus primarily on the interplay between the three elements mentioned in the statute (geographic area, type of employment restricted, and duration), and all three aspects are relevant here.  "Geographic limitations in non-competition agreements must be tailored so that the scope of the agreement is *no greater than is reasonably necessary* to protect the employer's legitimate business interests." *Superior Consulting Co. v. Walling*, 851 F. Supp. 839, 847 (E.D. Mich. 1994).

---

[1] When interpreting contracts in a diversity action, courts in  this Circuit generally enforce the parties' contractual choice of forum and governing law. *E.g., Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007).  Pursuant to ¶ 10 of the parties' Agreement, Michigan law governs. *See* Pl.'s Compl. Ex. A to Ex. 1. Neither party here disputes the application of Michigan law.

11

Accordingly, there is no bright line as to the maximum geographic range of an enforceable non-compete agreement -- an agreement with no specified limitation can potentially be reasonable where the employer has legitimate business interests throughout the world and a broad agreement is necessary to protect those interests. *Id.* at 847.

Similarly, whether the type of employment prohibited is reasonable is also a matter of legitimate competitive business interests. To be reasonable, the non-compete agreement "must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill." *See Certified Restoration*, 511 F.3d at 547 (quoting *St. Clair Med. P.C. v. Borgiel*, 715 N.W.2d 914, 919 (2006)).[2]

Finally, whether the duration of a non-compete agreement is reasonable is a case-by-case determination that must be examined in the context of the other factors. While "Michigan courts have not provided any bright line rules," *Certified Restoration*, 511 F.3d at 547, "they have upheld non-compete agreements covering time periods of six months to three years," though agreements at the shorter end of that range appear to be more common and more uniformly upheld, *see Whirlpool*

---

[2] Agreements may also prohibit competition by a former employee that had access to confidential information where there is legitimate concern of a risk that the employee could use that confidential information to gain an unfair competitive advantage. *See Certified Restoration*, 511 F.3d at 549. The employee's new position with the competitor must, however, be comparable -- that is, one where the confidential information could be competitively useful. *Id.*

12

*Corp. v. Burns*, 457 F. Supp. 2d 806, 813 (W.D. Mich. 2006); *see also Lowry Computer Products, Inc. v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997) (one year); *Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 742 N.W.2d 409, 413 (Mich. App. 2007) (two years); *Coates v. Bastion Brothers, Inc.*, 741 N.W.2d 539, 544-45 (Mich. App. 2007) (one year); *St. Clair Med., P.C. v. Borgiel*, 715 N.W.2d 914, 917 (Mich. App. 2006) (one year).

Unlike the confidentiality provisions of the Agreement, Crissman did potentially breach the plain language of the non-compete provisions. There are two relevant non-compete subsections. First, Section 4(c) provides that Crissman may not "[d]ivert or attempt to divert business opportunities away from Great Lakes, or encourage business opportunities to conduct business with a Great Lakes competitor." As with the confidentiality provisions, Great Lakes has made no direct claim that Crissman has violated this provision, and Crissman directly denies violating it. It is plausible that Crissman's activity in counties directly abutting those counties in which Great Lakes competes could divert some business away from Great Lakes. Here again though, Great Lakes has not made any specific allegations about actual instances where Crissman has directly or indirectly diverted business opportunities, and "an injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural." *Marzullo*, 591 F. Supp. 2d at 942.

13

Crissman did, however, potentially breach Section 4(d), which provides that Crissman may not "[e]ngage in . . . employment with any other entity . . . that provides, or consults in providing, home health care, hospice care, or the sale or rental of durable medical equipment within Great Lakes's market area." The parties agree that CHI satisfies this language and qualifies as a competitor. Great Lakes argues that this means that the non-compete clause was necessarily violated and that an injunction is the only proper remedy, since Crissman works for CHI and CHI competes with Great Lakes in Great Lakes's market area -- despite the fact that though Crissman has no role in Great Lakes's market area. Essentially, Great Lakes argues that the Agreement should be interpreted and enforced to prohibit Crissman from working in *any* capacity, in *any* location, with a competitor as defined under the Agreement. Crissman responds that such a reading of the Agreement would be overbroad, and provides compelling evidence that her service area is restricted to counties outside of those where Great Lakes had Medicare certification, and that therefore her employment with CHI does not violate Section 4(d). Crissman Decl. Exs. D-E.

When viewing the potential violation in terms of the range of the restriction involved, the type of employment restricted, and the duration of the restriction, the Court finds that the non-compete provisions are far broader than necessary, and too broad to be enforced in this circumstance. As noted above, "Geographic

14

limitations in non-competition agreements must be tailored so that the scope of the agreement is *no greater than is reasonably necessary* to protect the employer's legitimate business interests," *Walling*, 851 F. Supp. 839, 847 (E.D. Mich. 1994) (emphasis added), and limitations on the nature of employment must "not prohibit the employee from using general knowledge or skill," *Certified Restoration*, 511 F.3d at 547. Great Lakes would have the Court enforce an agreement that would -- taken by its plain language -- prevent Crissman from serving, for example, as a janitor at a CHI location in California because she would nevertheless be "[e]ngag[ing] in . . . employment with [an] entity . . . that provides, or consults in providing, home health care, hospice care, or the sale or rental of durable medical equipment within Great Lakes's market area."  According to Great Lakes, the location in which Crissman works and the position she holds is irrelevant to the analysis, based on the language of the Agreement.  This extreme broadness in the geographical range and type of employment restricted is simply not necessary to protect Great Lakes's interests, especially when viewed in conjunction with the long duration of the Agreement.  Crissman does not engage in business in any location where Great Lakes is certified, and specifically tailored her employment to avoid such activity.  While it is not unreasonable on its face for Great Lakes to assert that it must protect territories where it competes, it is unreasonable for Great Lakes to prevent Crissman from working for CHI merely because of CHI's status

15

as a competitor, despite the fact that there is no evidence that Crissman's employment directly encourages competition with Great Lakes or inhibits Great Lakes in any way.

Last, the Court also cannot ignore the fact that in order to enforce the non-compete provisions of the Agreement, the court would have to *extend* the duration of that Agreement, which expired on August 13, 2015. While the expiration of the non-compete provisions is not the result of any failure on Great Lakes's part in zealously asserting its rights, courts have only extended similar clauses in the most extreme circumstances:

> In cases where a party has flouted the terms of a noncompetition agreement, the court should be able to fashion appropriate equitable relief despite the fact that the parties did not expressly provide for such relief in their agreement. Furthermore, as courts allowing extensions of the terms of noncompetition agreements have found, it may not be possible to determine monetary damages with any degree of certainty. Where this is the case, the breaching party should not be rewarded because the agreement has already expired.

*Thermatool Corp. v. Borzym*, 575 N.W.2d 334, 338 (Mich. Ct. App. 1998); *see also Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, No. 07-10341, 2008 WL 2218427 (E.D. Mich., May 27, 2008) (finding equitable extension is only warranted where "1) the breaching party flouted the terms of the covenant not to compete; 2) the breach consisted of continuous and systematic activity, as opposed to an isolated transaction; and 3) it is not possible to determine monetary damages

16

with any degree of certainty."). No such extreme conduct is present here -- this case involves no clear "flouting" of the Agreement or bad faith, as in other cases that have permitted extension. *E.g.*, *Superior Consultant Co. v. Bailey*, No. 00-CV-73439, 2000 WL 1279161, at *5 (E.D. Mich. Aug. 22, 2000) (equitable extension of a non-compete agreement granted where the defendant misled his former employer into thinking that he was leaving for a non-competitor company, when he was in fact leaving for a direct competitor).

In sum, it is clear that Great Lakes has a low likelihood of success on the merits, and the other preliminary injunction considerations do not strongly counsel in favor of injunctive relief.[3] Accordingly, the Court will deny Great Lakes's motion for a preliminary injunction.

---

[3] With regard to irreparable harm, Great Lakes alleges that it will be harmed by (1) interference with expected growth, (2) use of confidential information, (3) use of high-level marketing and business strategies, (4) loss of customer goodwill, and (5) threat to business vitality and viability, but there are no facts in the pleadings that demonstrate specific harm that would result. While Great Lakes could undoubtedly incur some harm as a result of the Court denying the injunction, there is no question that issuing an injunction would cause significant harm to Crissman, who would be unable to collect her salary during the period of the injunction. This is not a case that demonstrates "irreparable harm which decidedly outweighs any potential harm to the [non-movant] if an injunction is issued." *In re DeLorean*, 755 F.2d at 1229.

With regard to potential harm to third parties, the factor does not strongly cut in either direction. The only third party that would be affected is CHI, but CHI hired Crissman with full knowledge of the Agreement, and had the option of hiring someone else for the position. *See Certified Restoration*, 511 F.3d at 551. No third party would be affected by the Court's decision not to issue an injunction.

17

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction (Dkt. # 2) is DENIED.

**IT IS SO ORDERED.**

Dated:  November 2, 2015                    s/Gerald E. Rosen

                                            Chief Judge, United States District Court

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 2, 2015, by electronic and/or ordinary mail.

                                            s/Julie Owens

                                            Case Manager, (313) 234-5135

---

Finally, with regard to public interest, public policy generally disfavors restraints on trade. *Walling*, 851 F. Supp. at 848. Nevertheless, courts in this district have held that if a Michigan non-compete agreement is reasonable under M.C.L. § 445.774a, its enforcement is not counter to public policy. *Id.* However, this inquiry is highly dependent on the plaintiff's likelihood of success in demonstrating that the agreement is reasonable, and, as discussed above, Great Lakes has failed to make such a demonstration here.

18